UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

GREENBRIAR DIGGING SERVICE
LIMITED PARTNERSHIP AND INSURANCE
COMPANY OF THE WEST                                                              PLAINTIFFS

V.                                                       CIVIL ACTION NO. 3:07CV601 DPJ-JCS

SOUTH CENTRAL WATER ASSOCIATION, INC.                              DEFENDANT

ORDER

This breach of contract action is before the Court on the cross motions of the parties for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court, having considered the memoranda and submissions of the parties, finds that Plaintiff's motion should be denied and Defendant's motion should be granted.

I.      Facts and Procedural History

On April 6, 2004, Plaintiff Greenbriar Digging Service Limited Partnership ("Greenbriar") entered a contract with South Central Water Association, Inc. ("South Central") to install an ozone system to reduce the color in the water produced by South Central's Well 4 to a value of twenty (20) units or less. Although Greenbriar installed the system specified by the project engineer, the system reduces color to the agreed upon twenty (20) units or less only when the well operates at a rate of 600 gallons per minute (gpm), half of the well's full capacity of 1,200 gpm. It is undisputed that the installed system cannot meet the agreed upon performance standards at 1,200 gpm.

Believing Greenbriar breached the contract, South Central withheld the final payment due. In response, Greenbriar filed this action, seeking the final payment and a judicial

declaration that it is not liable to South Central on the contract and performance bond. Federal jurisdiction is based on 28 U.S.C. § 1352 in that this cause of action involves a bond executed under the laws of the United States. Complaint ¶ 4. South Central filed a counterclaim for breach of the contract and the performance bond. Both parties have now moved for summary judgment in their favor, although South Central's motion is limited to the issue of liability.

## II. Analysis

### A. Summary Judgment Standard

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Although the case is set for a non-jury trial, Greenbriar has stated that the issues of

contract interpretation should be resolved by the Court based on the pending motions. Greenbriar Brief in Support of Motion for Summary Judgment [43] at 9.

      B.      Implied Warranty Versus Express Warranty

Greenbriar argues that South Central impliedly warranted the adequacy of its plans and specifications when they were provided to Greenbriar for use in bidding on and performing the work. Thus, because Greenbriar followed the specifications, it is not responsible for the installed system's failure to meet the stated goal of the contract. To support this contention, Greenbriar relies on the doctrine established in *United States v. Spearin*, 248 U.S. 132 (1918).

Under the *Spearin* doctrine, "if the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications." *Id.* at 136. The modern approach to the *Spearin* doctrine assigns responsibility for a defective specification according to whether it is a "performance" or "design" specification. *See PCL Constr. Servs., Inc. v. United States*, 47 Fed. Cl. 745 (Fed. Cl. 2000). If the parties agree to a performance specification, then the contractor bears the responsibility; if they agree to a design specification, then the owner bears responsibility. *Id.* However, "[c]ontracts may have both design and performance characteristics." *Caddell Constr. Co., Inc. v. United States*, 78 Fed. Cl. 406, 411 (Fed. Cl. 2007); *see also Hawaiian Bitumuls & Paving v. United States*, 26 Cl. Ct. 1234, 1240 (Cl. Ct. 1992) ("Government contracts often contain both design and performance specifications."). Accordingly, the "application of a *Spearin* implied warranty of adequacy is appropriate when the particular contract specification in question most properly can be characterized as a design specification." *Hawaiian Bitumuls & Paving*, 26 Cl. Ct. at 1240.

There are no Mississippi cases addressing the *Spearin* doctrine by name, and none that turn on the distinction between design and performance specifications.[1] Nevertheless, Mississippi courts have long recognized that an owner impliedly warrants the sufficiency of plans and specifications followed by the contractor:

> The rule has become well settled, in practically every American jurisdiction in which the matter has been involved, that a construction contractor who has followed plans or specifications furnished by the contractee, his architect or engineer, and which have proved to be defective or insufficient, will not be responsible to the contractee for loss or damage which results solely from the defective or insufficient plans or specifications, in the absence of negligence on the contractor's part, or any express warranty by him as to their being sufficient or free from defects. We have been cited to no case, and we are unable to find one, where this rule has not been followed, except those making a distinction between completed and uncompleted work-a factor not present here. It should be noted that the text of the rule limits its application to the parties to the contract.

*Trs. of First Baptist Church of Corinth v. McElroy*, 78 So. 2d 138, 141 (Miss. 1955) (citations omitted); *see also Southland Enters., Inc. v. Newton County*, 838 So. 2d 286, 289-90 (Miss. 2003); *Mayor and City Council of City of Columbus, Miss. v. Clark-Dietz & Assocs.-Eng'rs, Inc.*, 550 F. Supp. 610, 625 (N.D. Miss. 1982); *Blue Bell, Inc. v. Cassidy*, 200 F. Supp. 443, 447 (N.D. Miss. 1961); *Havard v. Board of Supervisors*, 70 So.2d 875 (Miss. 1954).

For purposes of this opinion, the Court need not determine whether Mississippi, if given the opportunity, would embrace the distinction between design and performance specifications. Even assuming an implied warranty exists pursuant to cases such as *Trustees of First Baptist Church of Corinth*, the resulting duties are delegable and can be assumed by the contractor. 78

---

[1] The parties seem to suggest, and the Court would agree, that the case should be decided based on Mississippi substantive law.

So. 2d at 141 (observing general rule that an implied warranty does not survive "any express warranty" as to defects in plans and specifications).

Greenbriar recognizes this distinction, but argues that "as between an owner's implied warranty as to the adequacy of its design and the contractor's express warranty as to the adequacy of its work, the owner's implied warranty clearly prevails under Mississippi law." Greenbriar Supplemental Brief [66] at 1. The Mississippi cases Greenbriar cites support that interpretation. For example, in *Havard*, the Mississippi Supreme Court ruled that a contractor's guarantee against defects in workmanship would not trump the owner's implied warranty as to the adequacy of the plans and specifications. 70 So. 2d at 877. Such guarantees as to workmanship are common and most cases follow the same approach as *Havard*. *See, e.g., Clark-Dietz,* 550 F. Supp. at 625 (finding that warranty as to "materials and workmanship" did not "guarantee the adequacy of the design" and therefore implied warranty prevailed). Significantly, none of the contracts addressed in Greenbriar's cited authority included a guarantee as to design.

This begs the question whether Greenbriar merely warranted its workmanship or the "adequacy of the design." *Id*. The contract answers the question. Paragraph 13 of the Technical Specification Part I, titled "Ozone Generation and Application System," provides as follows:

> GUARANTEE REQUIREMENTS: The contractor shall guarantee that the ozonation system will reduce the color in raw well water from Well 4 to twenty (20) units or less in the finished water, as noted in these Contract Documents. This guarantee shall include the repair, without cost to the Owner, of *any defect due to design*, materials, and/or workmanship.

(Emphasis added). According to Greenbriar, this language does not "warrant[] that the owner's plans and specifications are free from defects." Greenbriar Supplemental Response [66] at 2.

5

Unless a contract is ambiguous, interpreting its meaning is a question of law. *A & F Props., LLC v. Madison County Bd. of Supervisors*, 933 So. 2d 296, 301 (Miss. 2006). "The mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." *Turner v. Terry*, 799 So. 2d 25, 32 (Miss. 2001). "Legal purpose or intent should first be sought in an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence." *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003). The Court reads the contract as a whole, "so as to give effect to all of its clauses." *One South, Inc. v. Hollowell*, 963 So. 2d 1156, 1162 (Miss. 2007) (citing *Brown v. Hartford Ins. Co.*, 606 So. 2d 122, 126 (Miss. 1992)). In addition, the Court must "accept the plain meaning of a contract as the intent of the parties where no ambiguity exists." *Id.* (quoting *Ferrara v. Walters*, 919 So. 2d 876, 881 (Miss. 2005)).

Here, Greenbriar's guarantee expressly included "repair" of "any defect due to design." The guarantee went well beyond mere workmanship as in cases such as *Havard* and *Clark-Dietz* and instead "guarantee[d] the adequacy of the design." *Clark-Dietz,* 550 F. Supp. at 625. The case therefore falls within the caveat to the general rule explained in *Trustees of First Baptist Church of Corinth*, 78 So. 2d at 141 (holding that contractor is not liable if it follows plans and specifications absent "any express warranty by him as to their being sufficient or free from defects"). Accordingly, any implied warranty regarding design must yield to Greenbriar's express warranty.[2]

---

[2]Other courts have reached the same conclusion under the *Spearin* doctrine, even with express warranties that were less specific than Greenbriar's warranty. *See Rhone Poulenc Rorer Pharm. Inc. v. Newman Glass Works*, 112 F.3d 695, 698 (3rd Cir. 1997) (holding "that the implied warranty by Plaintiff based on the specifications of the type and manufacturer of the spandrel glass must yield to Defendant's express warranties against defective materials");

6

C. Whether Greenbriar Met its Guarantee

Even with Greenbriar's express warranty of the design, the Court must still address the contention that the finished product complied with the contract specifications. The contract included Greenbriar's "guarantee that the ozonation system will reduce the color in raw well water from Well 4 to twenty (20) units or less in the finished water, as noted in these Contract Documents." It is undisputed that the system will reduce the color to twenty (20) units at a flow rate of 600 gpm. Greenbriar submits that because the guarantee is silent as to flow rate, it met its obligation under the guarantee. Greenbriar Brief in Support of Motion for Summary Judgment [43] at 3.

As stated earlier, the Court must read the contract as a whole, "so as to give effect to all of its clauses." *Hollowell*, 963 So. 2d at 1162 (citation omitted). Here, there is no dispute that the contract documents establish the well's full capacity as being 1,200 gpm. *See* Greenbriar's Brief in Support of Motion for Summary Judgment [43] at 6. Likewise, Greenbriar agrees that "[a]s installed, the color in the water is reduced to 20 units or less but at a flow rate of less than full capacity." Greenbriar's Brief in Support of Motion for Summary Judgment [43] at 3. The guarantee itself references other portions of the contract when it states that Greenbriar warrants the reduction of color "as noted in these Contract Documents."

The Court finds that the guarantee, when read in conjunction with the full contract, is not ambiguous. Greenbriar was required to install a system which would reduce the color of the

---

*Graham Const. Co., Inc. v. Earl*, 208 S.W.3d 106, 110 (Ark. 2005) ("As a general rule, where a contract contains an express warranty on the subject of an asserted implied warranty, the former is exclusive, and there is no implied warranty on the subject.") (citing *Carter v. Quick*, 563 S.W.2d 461 (1978)).

7

water to twenty (20) units. It would be unreasonable to interpret the guarantee as requiring a reduction of color only when operating at half of the well's full capacity. *See generally Tupelo Redev. Agency v. Abernathy*, 913 So. 2d 278, 284 (Miss. 2005) (citations omitted) (holding that "[w]here a contract is silent as to one of its terms, the court is not bound to adopt a construction which is not compelled by the instrument and which no man in his right mind would have agreed to"). By its own admission, Greenbriar failed to produce a system that would meet the performance goals when the well operated at–or even close to–full capacity. *See* Greenbriar's Brief in Support of Motion for Summary Judgment [43] at 3.

**III. Conclusion**

Based on the foregoing, the Court finds that Plaintiffs' motion for summary judgment should be denied. Defendant's motion for summary judgment on its counterclaim as to liability only is granted. Defendant is instructed to contact Courtroom Deputy Ann Nelson to set the case for trial on damages.

**SO ORDERED AND ADJUDGED** this the 26th day of March, 2009.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE