IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

GREENBRIAR DIGGING SERVICE LIMITED
PARTNERSHIP and INSURANCE COMPANY
OF THE WEST                                                                                    PLAINTIFFS

VS.                                                         CIVIL ACTION NO. 3:07-CV-00601-DPJ-JCS

SOUTH CENTRAL WATER ASSOCIATION, INC.                                  DEFENDANT

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This construction contract dispute was tried without a jury on June 8, 2009. Prior to trial, the Court entered an order [67] that denied the motion for summary judgment filed by Plaintiff/Counter-Defendant Greenbriar Digging Service LP ("Greenbriar") and granted the motion for summary judgment filed by Defendant/Counter-Plaintiff South Central Water Association, Inc. ("South Central"). That order established Greenbriar's liability to South Central.

On June 8, 2009, the damages aspect of the case was tried, and following the close of evidence, the parties agreed with the Court's suggestion to appoint an expert to address the proper quantum of damages. After the parties agreed to a protocol, the expert was retained; he issued a report; was deposed; and the parties thereafter submitted supplemental proposed findings of fact and conclusions of law received February 1, 2010.

The Court, having fully considered the evidence at trial in addition to a post-trial expert report and the parties' supplemental submissions, now enters its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). For the reasons stated below, the Court finds that damages should be awarded to South Central in the amount of $693,000.

1. Liability has been established. *See Greenbriar Digging Serv. LTD. P'ship v. S. Cent. Water Ass'n, Inc.*, Civil Action No. 3:07-CV-601, 2009 WL 812241 (S.D. Miss. Mar. 26, 2009). As for damages, the parties agree that the standard is the one stated in cases such as *Sumrall Church of Lord Jesus Christ v. Johnson*:

> When a contractor performs substantially, yet fails to carry out the terms and conditions of his agreement, damages should be awarded to the non-breaching party (1) on a cost basis in a sum sufficient to bring the building up to the specifications of the contract and agreement between the parties (*Bevis*, 243 Miss. at 560, 139 So. 2d at 380), or (2) on a diminished value basis of the defective building as compared to what its value would have been had it been constructed properly.

757 So. 2d 311, 314 (Miss. Ct. App. 2000). The parties tried the case based on the first alternative theory, entitling South Central to recover the cost of reworking the system to meet the contract specifications, plus the contract price, minus the amounts already paid. *See Wright v. Stevens,* 445 So. 2d 791, 796 (Miss. 1984). Stated differently, this equals the cost of repair minus the $77,655.29 balance of the original contract price.

2. South Central bears the burden of proof on this issue, and in determining whether it met that burden, the Court notes that its purpose

> is to restore the injured party to the financial position he would have been in had there been no breach. His recovery is limited to the loss actually suffered by reason of the breach, and he is not entitled to be placed in a better position than he would have been if the contract had been performed.

*Leard v. Breland*, 514 So. 2d 778, 782 (Miss. 1987) (citing *Mid-Continent Tel. Corp. v. Home Tel. Co.*, 319 F. Supp. 1176, 1198 (N.D. Miss. 1970). In this regard, "a reasonable basis for computation and the best evidence which is obtainable under the circumstances of the case, and which will enable the trier to arrive at a fair approximate estimate of loss is sufficient proof." *Koehring Co. v. Hyde Constr. Co.*, 178 So. 2d. 838, 853 (Miss. 1965).

3. On April 6, 2004, Greenbriar entered into a contract with South Central for a project designated as "Contract III: Ozone Water Treatment Facility" ("the Project"), the essential purpose of which was to install an ozone system to reduce the color in the water produced by South Central's well number 4.

4. The contract price for this work was $570,025.00.

5. The project was designed by Diversified Consultants, Inc. ("the Project Engineer"), who had a contract with South Central for the design of the ozone system and its accessory parts.

6. The project was designed around a system produced by Ozocan Corporation, and the ozone generator referenced in the Project Engineer's specifications was the "Hankin Ozone Systems Limited OzoPulse Model PH 58 ozone generator, or equal."

7. This equipment utilizes pressure to push ozone through the system to the point of mixing it with the water to reduce color.

8. The Contract between Greenbriar and South Central includes the following:

> GUARANTEE REQUIREMENTS: The contractor shall guarantee that the ozonation system will reduce the color in raw well water from Well 4 to twenty (20) units or less in the finished water, as noted in these Contract Documents. This guarantee shall include the repair, without cost to the Owner, of any defect due to design, materials, and/or workmanship.

9. The system installed by Greenbriar reduces the color of the water to 20 units or less at a flow rate between 600 and 700 gallons per minute (gpm), well below the anticipated maximum flow rate of 1,200 gpm and the actual flow rate of 1,000 gpm.

10. In April 2005, Greenbriar considered the project complete and applied for its final payment of $77,655.29. South Central refused to pay the final amount because the system would not reduce color to 20 units at 1,200 gpm, or anything approaching the maximum capacity.

11. After South Central refused to make the final payment of $77,655.29, Greenbriar and its surety, Insurance Company of the West, brought this suit to recover Greenbriar's final payment and sought declaratory relief in the form of a judgment that they have no liability to South Central on the contract and performance bond. South Central counterclaimed for breach of the contract and the performance bond.

12. By Order entered March 26, 2009, the Court found Greenbriar liable to South Central reserving for trial the issue of South Central's damages. While there is no indication that Greenbriar did anything other than follow the design specifications, it had guaranteed "any defect due to design, materials, and/or workmanship." The Court's Order is incorporated by reference.

13. The problem with the system Greenbriar installed is that it fails to inject sufficient levels of ozone into the water. This is the result of a lower than necessary level of ozone generation. While the current generator is rated as capable of producing 100 pounds of ozone per day, it produces less than that amount. Moreover, both of the parties have presented evidence that the rate of production must be in the range 218-300 pounds per day to achieve the desired, and contractually agreed upon, 20 units at a flow rate approaching the well's anticipated capacity. 14. The Court found South Central's expert Wayne Wolfe to be credible with respect to the ozone production rates, and there was no expert testimony offered to rebut his findings. Wolfe testified that the rate necessary for Well 4's maximum flow rate of 1,200 gpm is

262 pounds per day, but that the generator should be capable of producing more to maintain an industry standard reasonable operating margin of approximately 25%.

15. Buddy Hand, General Manager of South Central, testified that Well 4 is producing less water than expected and that the flow rate is actually 1,000 gpm.

16. Wolfe testified that he could provide a system capable of meeting the contract specifications for $1,204,000.00.

17. Wolfe's quote is for a system that utilizes a slight vacuum to draw the ozone through the system. Thus, while Wolfe's system and the Ozocan system both generate and utilize ozone to reduce the color of water, they employ different technologies. In Wolfe's opinion, his equipment is superior to the equipment called for in the contract.

18. In order to utilize Wolfe's system, substantial modifications would be required in the current system.

19. Greenbriar originally suggested that damages should be $320,000. This figure is based on one of many remedial measures Ozocan proposed in 2004 when the deficiencies were noted. *See* Pl.'s Ex. 6. However, Wolfe gave credible testimony that the repairs Ozocan recommended would cost considerably more than $320,000. In addition, Greenbriar's General Partner, Dale Smith, testified the $320,000 repair option was not Ozocan's final suggestion for remedying the insufficient levels of ozone generation. Significantly, a July 2006 proposal was offered that would increase production to 270 pounds per day at a cost of $693,000. The Court finds that this figure more accurately reflects the actual damages.

20. Because the record appeared lacking in certain respects, the Court, with the consent of the parties, retained Michael Oneby pursuant to Rule 706 of the Federal Rules of

Evidence. Mr. Oneby was instructed as follows:

> The expert will be instructed by the Court to determine independently, and in writing, by no later than July 31, 2009, what is required to reduce the color units in the water produced by Well No. 4 to 20 units at a flow rate of 1200 gpm including what changes or modifications, if any, are necessary to the existing equipment, structure, etc. and/or what additional equipment, if any, would be necessary to achieve the desired color level and the sizing and costs associated with same. The expert will also determine whether or not it would be more economical to replace the existing equipment with a new pressurized and/or vacuum system.

21. Mr. Oneby's report set forth two alternatives for meeting the contractual goal of 20 units or less of color at 1200 gpm. *See* Ex. A hereto at 10. The first option is installing a new ozone system ("Option 1"). Mr. Oneby's opinion is that the cost of Option 1 would be $990,000.00. The second option ("Option 2") involves upgrading the current system installed by Greenbriar.

22. South Central's Supplemental Proposed Findings of Fact and Conclusions of Law does not suggest that it should be compensated for Option 1 or Wolfe's vacuum system. *See* Ex. B hereto. So too, its Motion for Rule 706 Expert Supplemental Report [78] acknowledges that it would not be entitled to Option 1. The Court concludes that South Central failed to demonstrate by a preponderance of the evidence that a new system is necessary to restore it to the position it would have held but for the breach. The Court also agrees with Oneby that Wolfe's vacuum system (the most expensive option) is not required. *See* Ex. A at 5. South Central should be compensated for the cost of upgrading.

23. As for the cost of upgrades, the record is not perfect. Oneby's report expressly states that he did not consider a number of significant costs because they were not addressed in the trial record. He did opine that the major equipment items necessary for Option 2 would cost $525,000.00. He also testified that the engineering costs for Option 2 could easily exceed

$150,000.00. Oneby Dep. 71-73. Based on this, South Central contends that its damages are *no less than* $675,000 to follow Oneby's Option 2.

24. Greenbriar suggests that Oneby's numbers leave too much wiggle room and cannot be trusted and, therefore, that damages should be nominal. Although Greenbriar declines to estimate the actual amount in its supplement, *see* Ex. C hereto, its earlier submission suggested damages in the amount of $320,000. *See* Ex. D. The Court rejects this number based on Oneby's report, Ozocan's July 2006 proposal, and Wolfe's testimony that the cost to upgrade would exceed $320,000.

25. Furthermore, the Court finds based on the opinions of Wolfe and Oneby that the 240 pounds of ozone per day reflected in Greenbriar's $320,000 proposal [Pl.'s Ex. 6] would not be sufficient to meet the contract specifications.

26. As stated, "a reasonable basis for computation and the best evidence which is obtainable under the circumstances of the case, and which will enable the trier to arrive at a fair approximate estimate of loss is sufficient proof." *Koehring Co.*, 178 So. 2d. at 853. In this case, the evidence is sufficient to establish a floor. Damages are assessed using an upgrade cost of $693,000, the July 2006 proposal from Ozocan. When considering the number of items excluded from Oneby's cost estimate for Option 2, the July 2006 figure is consistent with Oneby's opinion as well as Wolfe's trial testimony.[1]

---

[1] The Court views this as a conservative number given the extent to which known expenses have been left unaddressed. Moreover, the July 2006 proposal would produce levels of ozone slightly below Wolfe and Oneby's recommendations. However, damages higher than this amount would require speculation.

The Court finds that damages should be calculated as follows:

$693,000         cost to bring the well up to specifications

Minus $77,655.29    balance of contract price.

Total: $ 615,344.71.

**SO ORDERED AND ADJUDGED** this the 12th day of March, 2010.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE
